# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1615-18T1

STATE IN THE INTEREST
OF G.C., a Juvenile.

_____

Submitted June 1, 2020 – Decided September 2, 2020

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket Nos. FJ-13-1006-18, FJ-13-1120-18, and FJ-13-1145-18.

Charles Moriarty, LLC, attorneys for appellant G.C. (Charles M. Moriarty, of counsel; Timothy C. Moriarty, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent State of New Jersey (Carey J. Huff, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Juvenile defendant G.C. (Greg)[1] appeals from a final disposition order entered following a bench trial finding he committed the following acts that would be crimes if committed by an adult: second-degree sexual assault by force or coercion, N.J.S.A. 2C:14-2(c)(1), and first-degree endangering the welfare of a child through the possession of child pornography, N.J.S.A. 2C:24-4(b)(3). Based on our review of the record, we find there was substantial credible evidence presented at trial supporting the court's adjudications and disposition order, but we are also convinced the trial court erred by failing to conduct a N.J.R.E. 104 hearing on Greg's request to suppress the evidence obtained as a result of the seizure of his cell phone and by failing to make findings of fact supporting its denial of his request to suppress the evidence. Because the judge who tried the case has retired, we affirm the adjudications and disposition order and remand for a hearing and determination of the suppression of evidence request, and a vacation of the adjudications and disposition order and a retrial in the event the court determines the evidence seized from the cell phone should have been suppressed.

---

[1]  We use initials and pseudonyms for clarity, to avoid confusion, and because juvenile records are exempt from public access pursuant to Rule 1:38-3(d)(5) and the names of alleged child victims of sexual offenses are exempt from public disclosure pursuant to Rule 1:38-3(d)(10) and (11).

## I.

To provide context for our discussion of the arguments presented on appeal, we summarize the pertinent facts. In the late afternoon on May 31, 2018, seventeen-year-old I.B. (Ida) returned to her home and reported to her twenty-eight-year-old sister C.B. (Claire) that Greg raped her earlier in the day. Claire called the police, and she and Ida's mother took Ida to a local hospital, where Ida was examined by a sexual assault nurse examiner and interviewed by Neptune City detectives Thomas Sheehan and Richard Johnson. As a result of their discussion with Ida, the detectives obtained her consent to take her cell phone and examine its contents. The detectives accessed Ida's phone and took photographs of a series of text messages she reported were exchanged between her and Greg prior to the alleged sexual assault. Arrangements were made for Ida to make a formal statement at the police station the following day.

After Ida provided a formal statement, and the detectives decided to charge and arrest Greg for sexual assault. Just before 9:00 p.m. on June 1, 2018, the detectives arrested Greg at his home and transported him to the police station. His mother separately went to the police station, stayed in the lobby for

3

a period of time before leaving, and informed the detectives Greg had a lawyer.[2]

Greg was charged in a juvenile complaint with second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1), and third-degree criminal coercion, N.J.S.A. 2C:13-5.[3] Greg was never advised of his Miranda[4] rights.

At the time of Greg's arrest at his home, detectives Sheehan and Johnson were aware Greg's cell phone might contain text messages relevant to the investigation because they had seen purported text messages between Ida and Greg on Ida's cell phone. They needed Greg's phone to confirm the messages on Ida's phone were actually sent and received from Greg's phone. As the detectives escorted Greg out of his house, detective Sheehan saw Greg give his mother a cell phone, but the detectives took no action to seize it.

---

[2] Greg's mother did not testify at trial. During his testimony, detective Johnson was asked whether the detectives read Greg his rights after he was arrested. Detective Johnson began to reply to the question, stating Greg's "mother said that he had a lawyer," but he was interrupted by defense counsel, who asked again whether the detectives read Greg his rights. Neither party inquired further about Greg's mother's statement about his lawyer.

[3] The record does not disclose the precise point in time the complaint was filed. Thus, it is unclear whether Greg was formally charged before or after his arrest and when he was formally charged.

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

Detective Johnson testified he had an opportunity to obtain a search warrant for the phone, but he did not obtain one. At around 9:30 p.m., he left the police station and went to Greg's home to obtain the phone. When Greg's father answered the door, detective Johnson identified himself as a police officer and told Greg's father he "needed to retrieve the phone . . . and that [he was] going to seize it as evidence." Greg's father invited detective Johnson inside, suggested the phone was probably in Greg's bedroom, brought detective Johnson upstairs to the bedroom, and searched for the cell phone while detective Johnson stood nearby. Greg's father did not find the phone in the bedroom.

Detective Johnson testified that while Greg's father looked for the phone in the bedroom, Greg's mother arrived at the home. At some point, she retrieved the cell phone from a planter on the back porch and gave it to detective Johnson.[5] He brought the phone to the police station and placed it into evidence.

---

[5] In his brief on appeal, Greg asserts his mother retrieved the cell phone after detective Johnson threatened to charge her with obstruction if she failed to turn the phone over. In support of his factual assertion, Greg cites to a police report that was not admitted in evidence and is not part of the trial record. We do not consider the report or Greg's factual allegations because they are not based on evidence presented to the trial court. See State v. Harvey, 151 N.J. 117, 201-02 (1997) ("An appellate court, when reviewing trial errors, generally confines itself to the record."). Detective Johnson was the only witness who testified about the manner in which he obtained the phone, and we limit our summary of the pertinent facts to the evidentiary record.

The detectives advised Greg his cell phone had been seized as evidence and they would seek a search warrant for it and search the phone using Cellebrite technology.[6] Greg was given a piece of paper and a pen, and the detectives asked him to write down his cell phone passcode. Detective Sheehan testified that, even if Greg did not give them the passcode, they would still attempt to search the cell phone when they obtained a warrant. The detectives did not use a consent to search form, explaining they had no intention of searching the phone without a warrant.

Greg was permitted to call his mother. After the call, he was left alone and wrote down the passcode to his phone on a piece of paper, which he gave to detective Johnson. At trial, Greg testified the detectives did not threaten him and he wrote down the passcode voluntarily, but he also claimed he was unaware he could have chosen not to supply the passcode.

The detectives used the passcode to unlock the phone, and they put it in "airplane mode" to protect the data from being deleted remotely. The detectives did not otherwise search the phone to review any data it contained. The phone

---

[6] Detective Sheehan testified a Cellebrite machine can "[s]ometimes . . . penetrate and breach the passcode; sometimes they can't."

was then turned off and placed into evidence, and nothing further was done with it until a search warrant for the phone was obtained three weeks later.

The search of the phone consisted of an extraction of its data that, in pertinent part, confirmed the May 31, 2018 exchange of the text messages between Ida and Greg that were on Ida's phone. In addition, the phone contained a video recording of a male vaginally penetrating the vagina of a female with his penis from behind. The faces of the male and female are not shown on the recording, but Ida testified she is the female in the video and Greg is the male, and the video shows Greg sexually assaulting her. During his trial testimony, Greg admitted he is the male in the recording, Ida is the female, and he made the recording on his phone.

Based on the discovery of the recording, the State added two additional charges against Greg prior to trial. The State charged Greg with the following additional offenses that would be crimes if committed by an adult: first-degree endangering the welfare of a child through the possession of child pornography, N.J.S.A 2C:24-4(b)(3), and third-degree invasion of privacy, N.J.S.A. 2C:14-9(b)(1).

At trial, Ida detailed the events she claimed led to the sexual assault. She spent the morning of May 31, 2018, with her friend, Z.J. (Zack). He received a

call from Greg, who invited Zack and Ida to his house. Greg and Ida knew each other. They had gone to school together for a few months three years earlier, and, during that time, they exchanged text messages and partially naked photographs of each other. Ida denied she and Greg had any type of physical relationship during that time.[7] She also testified she had no contact with Greg after leaving the school in May 2015 and prior to her visit to Greg's house with Zack on May 31, 2018.

After Zack and Ida entered Greg's house, they went to Greg's bedroom where Zack and Greg played video games while Ida sat on the edge of the bed on her cell phone. While she was on her cell phone, Ida received text messages from Greg requesting she engage in various sex acts with him.[8] Ida uniformly rebuffed Greg's suggestions, directly responded "No" or "Nope" to a number of his requests, and otherwise clearly stated she had no interest in his proposals.

At some point, Zack said he was going to get something to eat and left the room. According to Ida, after Zack departed, Greg grabbed her around the waist,

---

[7]  Ida testified that during the time she attended school with Greg, on one occasion he placed his hand over her clothes in the area of her vagina while they were on a school bus.

[8] Ida testified that when she arrived at Greg's house, he asked for her cell phone number and she gave it to him.

forced his hand down her pants, inserted his fingers in her vagina, and put his penis in front of her face. Ida testified Greg pulled her hair and forced her down onto the bed. She physically resisted and repeatedly told him to stop. Ida explained Greg overpowered her, turned her onto stomach, and inserted his penis into her vagina from behind.

Ida testified Greg stopped vaginally penetrating her only when Zack re-entered the room. She then immediately left the room and Greg's house and returned to Zack's car, which was parked outside. Zack left the house and drove Ida home, where she told her sister she had been raped and was transported to the hospital, where she reported what occurred to the detectives.

Greg testified at trial and admitted he exchanged the texts recovered from his and Ida's phones. He also acknowledged Ida said "no" repeatedly and exclusively to his requests that she engage in sexual acts with him. However, he testified that Ida willingly participated in their physical interactions after Zack left the room, and that he had consensual sexual intercourse with Ida, which he recorded in part on his phone.

Following the presentation of the evidence and counsels' closing arguments, the court found that the text messages demonstrated Greg attempted to persuade Ida to have sex with him, and that she told him "no" repeatedly and

unequivocally. The court further found Ida was a credible witness and Greg was not.[9] The court found "[t]he testimony . . . clear and concise as to what [Greg] did," and the court determined there was no credible evidence supporting Greg's claim his vaginal penetration of Ida was consensual.

The court found that Greg vaginally penetrated Ida by force or coercion, and that Greg recorded a prohibited sexual act of a minor on his cell phone. Accordingly, the court adjudicated Greg a delinquent by finding he committed the following acts that would be crimes if committed by an adult: sexual assault by force or coercion as alleged in count one and endangering the welfare of a child through the possession of child pornography as alleged in count three.

The court did not adjudicate Greg a delinquent on count two, which charged criminal coercion, "not because the factors were not met . . . but simply because [the court did not] believe at this point that [the] second count should be pursued." The court also found the State failed to prove Greg committed the invasion of privacy offense charged in count four because it was "duplicative."

At the disposition hearing, the court found six aggravating factors and no mitigating factors. The court imposed concurrent thirty-six-month terms of

---

[9] The court also found Zack, who testified on Greg's behalf concerning the May 31, 2018 events, was not a credible witness.

incarceration at the Training School of Boys as its disposition on counts one and three. The court further required Greg comply with the requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23.

Greg appealed from the court's final order of disposition. He presents the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN NOT SUPPRESSING EVIDENCE GATHERED FROM [GREG'S] PHONE BECAUSE THE EVIDENCE SEIZED RESULTED FROM MULTIPLE CONSTITUTIONAL VIOLATIONS BY THE STATE.
>
> > A. STANDARD OF REVIEW OF A TRIAL COURT'S EVIDENTIARY RULINGS.
> >
> > B. THE POLICE ENTERED [GREG'S] PARENT'S HOME WITHOUT A WARRANT AND SEIZED THE PHONE IN VIOLATION OF [GREG'S] CONSTITUTIONAL RIGHTS.
> >
> > C. POLICE VIOLATED [GREG'S] RIGHTS BY QUESTIONING [GREG] WITHOUT OBTAINING CONSENT TO SEARCH[.]
> >
> > D. THE STATE QUESTIONED [GREG] IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS AND FAILED TO HONOR HIS REQUEST FOR COUNSEL.

11

POINT II

THE VICTIM IN THIS MATTER HAD MADE
SIMILAR ALLEGATIONS AGAINST OTHERS
PRIOR TO THE ONE AGAINST [GREG] AND THE
DEFENSE SHOULD HAVE BEEN ALLOWED TO
CROSS EXAMINE THE VICTIM ON THESE PRIOR
CLAIMS, AND ALSO TO CALL WITNESSES WHO
WERE THE SUBJECT TO THE PRIOR CLAIMS BY
THE VICTIM.

POINT III
THE COURT SHOULD HAVE DENIED FRESH
COMPLAINT TESTIMONY FROM THE VICTIM'S
SISTER AS [IDA'S] STATEMENT WERE THE
PRODUCT      OF      [CLAIRE'S]      COERCIVE
INTERROGATION.

II.

"We deferentially review the trial judge's factual findings, crediting those 'which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Alessi, 240 N.J. 501, 517 (2020) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Balducci v. Cige, 240 N.J. 574, 594-95 (2020) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). We will only disturb those findings "if they are so clearly mistaken that the interests of justice demand intervention and correction." State v.

Williams, 461 N.J. Super. 80, 94 (App. Div. 2019) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). However, "we owe no deference to the trial judge's legal conclusions, which we review de novo." Alessi, 240 N.J. at 517 (citing State v. Hinton, 216 N.J. 211, 228 (2013)).

Greg does not challenge the court's credibility determinations or its findings he sexually assaulted Ida by knowingly penetrating her vagina by force or coercion, see N.J.S.A. 2C:14-2(c)(1), and he knowingly caused or permitted a child, Ida, to engage in a prohibited sexual act that he knew, had reason to know, or intended was to be photographed, filmed or reproduced, see N.J.S.A. 2C:24-4(b)(3). Instead, he claims the adjudications should be reversed because the court erred by: denying his request to suppress evidence recovered from his phone; barring cross-examination of Ida concerning her alleged false accusation of sexual assault in an unrelated criminal proceeding; and allowing Ida's sister Claire to testify about Ida's alleged fresh complaint about the sexual assault Ida alleged Greg committed. We consider the arguments in turn.

## A.

Greg argues his adjudications should be reversed because the court erred by denying his request to suppress the text messages, video recording, and other data, seized from his cell phone. More particularly, Greg claims the seizure of

13

the phone was the result of an unconstitutional search of his home without the knowing and voluntary consent of his parents, see generally State v. Domicz, 188 N.J. 285, 305 (2006); State v. Johnson, 68 N.J. 349, 353-54 (1975); his mother's turnover of the phone was in response to a deceptive threat made by detective Johnson, see generally State v. Hagans, 233 N.J. 30, 42 (2018); and the detectives obtained the passcode to the phone from him without advising him of his Miranda rights, see generally State v. Andrews, __ N.J. __, __ (2020) (slip op. at 29-30), and in violation of his right to counsel, see generally, State ex rel. P.M.P., 200 N.J. 166, 177-78 (2009).

The State contends the phone was not obtained as a result of a search, but instead was voluntarily turned over by Greg's mother. See generally In re J.A., 233 N.J. 432, 438 (2018). The State also argues that even if the phone was seized during a search, the search was properly conducted under the exigency exception to the warrant requirement. See generally State v. Manning, 240 N.J. 308, 333 (2020). The State further claims Greg's turnover of the passcode to his cell phone did not violate his Miranda rights because his provision of the passcode was of minimal testimonial value and conveyed information that was a foregone conclusion. See generally Andrews, __ N.J. __ (slip op. at 31-39).

"The Fourth Amendment of the United States Constitution and Article 1, Paragraph 7 of the New Jersey Constitution both safeguard the right to privacy and forbid warrantless entry into a home except under certain circumstances." J.A., 233 N.J. at 446 (citing State v. Davila, 203 N.J. 97, 111-12 (2010)).  A warrantless entry into a home "is presumptively invalid unless the State can show that it falls within one of the specific, delineated exceptions to the general warrant requirement." Ibid.

"A warrantless search [or seizure] is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." State v. Cooke, 163 N.J. 657, 664 (2000), overruled on other grounds, State v. Witt, 223 N.J. 409, 450 (2015).  Any evidence found pursuant to a warrantless search that does not fall under an exception, "is subject to suppression . . . under the exclusionary rule." J.A., 233 N.J. at 446 (quoting State v. Williams, 192 N.J. 1, 14 (2007)).  The exclusionary rule "prohibits the State from 'introducing into evidence the "fruits" of' unlawful police conduct, and thus denies 'the prosecution the spoils of constitutional violations.'" Ibid. (quoting State v. Badessa, 185 N.J. 303, 310-11 (2005)) (internal citations omitted).

The State has the burden of proving by a preponderance of the evidence a warrantless search falls within an exception to the warrant requirement. State

v. Shaw, 213 N.J. 398, 409 (2012).  Here, detective Johnson entered Greg's home and seized his phone without a warrant.  As such, it was incumbent upon the State to prove the search was valid under an exception to the warrant requirement.  Ibid.; see also State v. Moore, 181 N.J. 40, 44-45 (2004).

Prior to commencement of trial, Greg's counsel raised issues concerning the admission of the evidence extracted from Greg's phone.  Defense counsel challenged "the surrender[] of the phone itself, allowing the police into the house without a warrant."  Further, Greg claimed he was compelled to "surrender[] . . . the [phone's] passcode without" having been advised of his Miranda rights.

The court properly understood defense counsel's arguments as a request for a suppression hearing, noting "there are a number of matters . . . which clearly, according to the Rules, . . . talk about having pretrial hearings, such as the issue of . . . whether or not [Greg] gave a passcode voluntarily or not." Nonetheless, the court found that a suppression hearing was unwarranted because its "policy has always been . . . that [it was] more than capable of listening to testimony during the course of a trial that has to do with issues, procedural issues, [c]onstitutional issues," and that a N.J.R.E. 104 hearing on Greg's request to suppress the evidence was unnecessary because there was no

jury. Thus, the court did not conduct a N.J.R.E. 104 hearing on the constitutionality of the seizure of the phone, or the subsequent extraction of information from it, and instead the court made clear it would consider and decide those issues during the bench trial.

"Our courts generally disfavor in limine rulings on evidence questions," State v. Cordero, 438 N.J. Super. 472, 484 (App. Div. 2014), because "[most] evidence problems are best and most expeditiously settled in the atmosphere and context of the trial[,]" ibid. (quoting State v. Hawthorne, 49 N.J. 130, 143 (1967)). However, "our criminal practice rules expressly direct courts to conduct pretrial hearings 'to resolve issues relating to . . . motions to suppress'" evidence. Id. at 485 (quoting R. 3:9-1(d)); see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 104 (2019) (explaining N.J.R.E. 104(a) "provides for determinations at a '104 hearing,' of preliminary evidence questions that are the exclusive province of the court, including . . . the . . . admissibility" of evidence).

In State v. Gibson, the Court considered a municipal court practice of incorporating the record of a suppression motion into the trial record. 219 N.J. 227, 245 (2014). The Court explained that where a defendant moves to suppress evidence based on an alleged constitutional violation, "[t]he better practice is to

conduct two separate proceedings": a N.J.R.E. 104 hearing on the motion to suppress evidence and, following disposition of the suppression motion, a trial on the merits. Ibid. The Court noted that conducting two separate proceedings "underscores the separate nature of each proceeding, the limited scope of a suppression motion, and the different standards of proof governing each proceeding." Ibid.

Although not at issue in Gibson, we also observe that a N.J.R.E. 104 suppression hearing and a trial on the merits are governed by different procedural rules. That is, with limited exceptions not applicable here, the Rules of Evidence do not apply in a N.J.R.E. 104 hearing, see N.J.R.E. 104(a)(1), but they do apply at a trial on the merits, see State v. Coder, 198 N.J. 451, 466 n.7 (2009) (explaining that at a N.J.R.E. 104 hearing to determine the admissibility of evidence, "the judge shall not apply the rules of evidence except for [N.J.R.E.] 403 or a valid claim of privilege"); see also State v. Allan, 283 N.J. Super. 622, 630 (Law Div. 1995) ("[I]t's generally a good practice, given the different standards of proof which are required in these cases, that [courts] separate out the motion to suppress and the issues on the motion to suppress from the issues on the trial." (citation omitted)).

In Gibson, the municipal court's decision to incorporate into the trial record the testimony presented at the suppression hearing "deprived [the] defendant of his right to complete cross-examination of the arresting officer." 219 N.J.at 242. The same issue is not presented here, but in our view the trial court's decision not to follow the preferred practice of holding a suppression hearing separate from the trial, even in cases heard by a judge without a jury, resulted in an inadequate record upon which the trial court could, and this court can, properly consider the constitutionality of the seizure of the cell phone and the extraction of its content.

Detective Johnson obtained the cell phone from Greg's mother, and the circumstances surrounding Greg's mother's production of the phone are essential to a determination of the constitutionality of the seizure of the phone and the subsequent extraction of information from it. However, when the State, which had the burden of proving the validity of the search and seizure of the phone in the absence of a warrant, State v. Atwood, 232 N.J. 433, 444-45 (2018), questioned detective Johnson about his interactions with Greg's mother prior to her turnover of the phone, defense counsel interposed a hearsay objection. The court properly sustained the objection because hearsay is inadmissible at trial, N.J.R.E. 802, but the court ignored it had advised the parties it would also

consider the suppression issues at trial, and it did not consider the rules prohibiting admission of hearsay do not apply during a hearing on a motion to suppress physical evidence, see N.J.R.E. 104(a)(1). Thus, as a result of the court's decision to hear the suppression motion and conduct the merits trial concurrently, the State was incorrectly barred from introducing evidence pertinent to the suppression motion and, concomitantly, defense counsel was required to object to testimony that was inadmissible at trial but which was relevant and admissible on Greg's claim his mother retrieved the phone involuntarily as detective Johnson's agent based on their interactions in the home.

In any event, the court's decision to combine the two proceedings, and subsequent failure to create a proper record as to each in accordance with the applicable rules, resulted in a less than fulsome record upon which it could properly decide the pertinent suppression issues. For example, if, in assessing whether Greg's mother's turnover of the phone constituted an unlawful search and seizure, it was determined Greg's mother turned over the phone "completely independent of the officer's investigation," J.A., 233 N.J. at 453, then detective Johnson's seizure of the phone from her would not violate any constitutional protections, ibid. On the other hand, if the evidence established Greg's mother

"act[ed] as an agent of the State when [s]he searched," ibid., for and retrieved the phone, it may be that her turnover of the phone resulted in seizure in violation of Greg's constitutional rights, compare ibid. (upholding a police seizure of a cell phone turned over by the defendant's brother in part because the "brother was clearly not acting as an agent of the State when he searched the house for the phone," his "actions were completely independent of the officer's investigation," and he "decided to search the house without solicitation or even encouragement from the officers present") with State v. Scrotsky, 39 N.J. 410, 415-16 (1963) (finding unconstitutional a warrantless search of the defendant's apartment where the victim of the crime, the defendant's landlord, let the detective into the apartment because the victim "acted as an arm of the police").

We do not suggest the correct resolution of any of the myriad of legal issues pertinent to the seizure of the phone and the extraction of the evidence from it, or that detective Johnson's interactions with Greg's mother resulting in the turnover of the phone is dipositive of the suppression issue.[10] Those issues,

---

[10] The other issues pertinent to the requested suppression of the phone and the evidence extracted from it include, but may not be limited to, the constitutionality of detective Johnson's entry into Greg's home, detective Johnson's interactions with Greg's father and mother prior to the turnover of the phone, and the constitutionality of Greg's delivery of the passcode without the provision of any Miranda warnings and following his mother's statement he had an attorney.

A-1615-18T1

and all other issues pertaining to the seizure of the phone and the evidence, should be decided based on a fulsome trial court record.

We provide the example of the court's evidentiary ruling on the exchange between detective Johnson and Greg's mother preceding the turnover of the phone to illustrate the court's attempt to concurrently conduct a hearing on the suppression issues and a trial on the merits resulted in an inadequate and incomplete record upon which the suppression motion could be properly decided. To be sure, Greg and the State should have done more to bring to the court's attention its failure to recognize the difference in rules applicable to the concurrent proceedings, but we consider the issue because the court's error was clearly capable of producing an unjust result in its disposition of the suppression motion. R. 2:10-2. For that reason, we remand for a hearing on Greg's request to suppress evidence of the phone and the data and information extracted from it.

The court also did not deliver what it indicated it would at the outset of the trial and what it was obligated to provide at the conclusion of a bench trial under Rule 1:7-4(a): findings of fact and conclusions of law on Greg's request to suppress evidence seized based on constitutional grounds. See R. 1:7-4(a); see also Estate of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301 (App. Div.

2018); <u>State ex rel. L.W.</u>, 333 N.J. Super. 492, 497-98 (App. Div. 2000) (remanding a trial court's decision adjudicating a juvenile delinquent for second-degree robbery because the court failed to make proper findings of fact and explain how the juvenile's actions satisfied the elements of the offense).

During the concurrent trial and suppression hearing, there was testimony concerning detective Johnson's purpose in going to Greg's home, his entry to the home, what occurred while he was in the home, and the seizure of the phone following Greg's mother's production of it. There was also testimony concerning Greg's arrest; the detectives' decision not to inform Greg of his <u>Miranda</u> rights; Greg's transportation to the police station; his mother's arrival at the police station, her statement Greg had a lawyer, and her departure from the station; the detectives' requests that Greg provide the passcode to his phone; and Greg's production of the passcode. In addition to requesting suppression of the evidence from the phone prior to trial, during trial defense counsel objected to the introduction of evidence – including the video recording – seized from Greg's cell phone based on the claim it was obtained in violation of his constitutional rights.

In its final decision, the court made no findings of fact related to the constitutional issues presented and Greg's request to suppress the phone and the

evidence extracted from it. Instead, the court confusingly found it was required "to determine whether or not there was some motivation for the finding of the cell phone where it was located, which was in a planter outside of the house." The court added it "believe[d] when the officer came back to the house to get the cell phone, he made it clear . . . that the cell phone is evidence and [he] want[ed] the cell phone and at that point, the cell phone . . . was found or located and given to the officer[]."

The court also found the detectives subsequently told Greg they needed the passcode "to put this cell phone into airplane mode in order to preserve what's in it" and further told Greg he was "either going to give [them] the passcode or [they were] going to get into it anyway." The court also determined Greg called his mother and subsequently gave the detectives the passcode, at which time the detectives gained access to the phone and put it in airplane mode to preserve its contents.

The court acknowledged Greg's claim the detectives' failure to provide <u>Miranda</u> warnings rendered their access to the phone unconstitutional, but the court did not make any factual findings related to the issue. Instead, the court concluded it did not "really . . . place the type of weight on the video that would warrant [its] consideration . . . that by getting this video off of [Greg's] . . . cell

24

phone that it really was a violation of his constitutional rights." The court also opined the constitutional issue raised by Greg "is really blown out of . . . proportion" because the police would have gained access to the phone even without Greg's provision of the passcode.[11] The court, however, added a conclusory finding that "under the totality of the circumstances, in any event, . . . the police conducted themselves clearly fairly and constitutionally in doing what they did with regard to the phone."

The court's terse conclusory statements do not constitute the requisite findings of fact, and do not include any credibility determinations, pertinent to addressing the constitutionality of detective Johnson's entry into Greg's home, the seizure of the phone, and the detectives' interactions with Greg in the absence of <u>Miranda</u> warnings and following his mother's statement Greg had a lawyer. And, other than generally denying the suppression motion, the court did not

---

[11] The court also noted Greg made use of evidence extracted from the phone. We reject that reasoning as a basis for affirming the court's determination on the constitutionality of the seizure of the phone and the extraction of information from it. Greg did not waive his right to challenge the constitutionality of the seizure of the evidence by relying on the evidence based on the court's potentially erroneous admission of it. See Saldana v. Michael Weinig, Inc., 337 N.J. Super. 35, 47-48 (App. Div. 2001) (rejecting a claim the plaintiff's request to admit a photograph at trial constituted a waiver of the plaintiff's right to challenge the court's rejection of the plaintiff's motion to crop the photograph because its admission "did not represent a waiver of [the plaintiff's] initial objection" to the uncropped photograph's admission).

make any findings of fact supporting its denial of Greg's request to suppress the evidence. The court's failure to make those findings renders it impossible for this court to conduct an appropriate review of the court's denial of Greg's request to suppress the evidence. See Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990) ("Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion.").

We would otherwise remand for the court to make the necessary findings, but the judge who tried the matter and denied the request to suppress the evidence retired. We therefore remand for the court to conduct a suppression hearing in accordance with N.J.R.E. 104(a)(1), and to make findings and conclusions of law supporting its decision following the hearing. In the event the court determines evidence from Greg's cell phone should be suppressed, the court shall vacate the adjudications and disposition order and conduct a new trial on the two remaining charges. In the event evidence from the phone is not suppressed, the court shall take no action concerning the adjudications and disposition, which we otherwise affirm subject to the results of the remand hearing. As noted, nothing in this opinion should be construed as an opinion on the merits of any issues related to the requested suppression of the evidence

obtained from the phone.  The issues shall be addressed and decided by the trial court based on the evidence presented at the remand hearing.

B.

Greg also argues the court improperly barred him from cross-examining Ida regarding "false allegations during a previous grand jury presentation involving similar and [contemporaneous] allegations."  Greg claims the indictment in a previous case in which Ida was an alleged victim of a sexual assault was dismissed after the State failed to present an exculpatory video to the grand jury showing Ida "was not credible and/or truthful."  Greg argues the trial court erred by refusing to allow cross-examination of Ida about the previous case based on a "narrow exception" to N.J.R.E. 608.  We disagree.

"Traditional rules of appellate review require substantial deference to a trial court's evidentiary rulings." State v. Morton, 155 N.J. 383, 453 (1998).  We will reverse an evidentiary ruling only if it "was so wide [of] the mark that a manifest denial of justice resulted." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999).  N.J.R.E. 608 precludes evidence of specific instances of conduct, other than by a prior conviction, to prove a witness's character for truthfulness or untruthfulness.  This rule "was designed to prevent unfair foraging into [a] witness's past" and to prevent "wide-ranging collateral attacks on the general

credibility of a witness [that] would cause confusion of the true issues in the case." State v. Guenther, 181 N.J. 129, 141-42 (2004). Our Supreme Court created a narrow exception to this rule, "in limited circumstances and under very strict controls," permitting a defendant to show a victim-witness made a prior false criminal accusation for the purpose of challenging the witness's credibility. Id. at 154.

In deciding whether to admit evidence of a prior false accusation, the trial court should conduct a N.J.R.E. 104 hearing and determine whether the defendant has proven by a preponderance of the evidence that the victim-witness made a prior accusation charging criminal conduct and whether that accusation was false. Id. at 157. The trial court may consider the following factors in making its determination whether questioning about the false accusation should be allowed:

> 1. whether the credibility of the victim-witness is the central issue in the case;
>
> 2. the similarity of the prior false criminal accusation to the crime charged;
>
> 3. the proximity of the prior false accusation to the allegation that is the basis of the crime charged;
>
> 4. the number of witnesses, the items of extrinsic evidence, and the amount of time required for presentation of the issue at trial; and

A-1615-18T1

5. whether the probative value of the false accusation evidence will be outweighed by undue prejudice, confusion of the issues, and waste of time.

[Ibid.]

Here, Greg claimed Ida falsely accused a defendant in a prior criminal proceeding, but Greg did not present evidence establishing in the first instance Ida made a false accusation. Instead, he argued the dismissal of the indictment in the prior criminal proceeding was based on a court's finding Ida made a false accusation. In denying Greg's request to cross-examine Ida about the alleged false statement, the trial court considered the other court's decision dismissing the indictment and the materials in support of Greg's application, and it concluded Greg failed to present any evidence demonstrating Ida made a false accusation about which she could be properly cross-examined under N.J.R.E. 608.

On appeal, Greg does not supply any of the materials submitted to the trial court and upon which the court denied his application.[12] We are therefore left without any basis in the record to consider, analyze, or reverse the court's

---

[12] It appears the court was provided with, and considered, transcripts of the grand jury proceeding, Ida's statements to the police and prosecutor's office, and a court reporter's notes transcribing the other court's decision dismissing the indictment.

determination there was no evidence Ida made a false accusation in the criminal proceeding. See R. 2:6-1(a) (stating the appendix "shall contain . . . such other parts of the record . . . as are essential to the proper consideration of the issues"); see also Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005) ("Nor are we obliged to attempt review of an issue when the relevant portions of the record are not included."). Greg fails to sustain his burden of demonstrating the court abused its discretion in barring the cross-examination of Ida on the purported false accusation, see Morton, 155 N.J. at 453, and, for that reason, we reject Greg's argument the court committed any error requiring the reversal of the adjudications.

C.

Greg next argues the court erred by allowing Ida's sister Claire to testify about Ida's initial report of the sexual assault on May 31, 2018, at Ida's home. Greg claims Claire's testimony was inadmissible as fresh complaint evidence because the court "abrogated its duty to examine the circumstances" surrounding the conversation between Ida and Claire to determine whether the "line between coercive and benign questioning was crossed." Greg contends Claire's testimony should have been excluded as inadmissible hearsay.

The fresh complaint doctrine allows "evidence of a victim's complaint of sexual abuse, otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated." State v. R.K., 220 N.J. 444, 455 (2015); see also State v. Hill, 121 N.J. 150, 163 (1990). In accordance with that limited purpose, "the fresh-complaint testimony is not to be used 'to corroborate the victim's allegations concerning the crime.'" R.K., 220 N.J. at 456 (quoting State v. Bethune, 121 N.J. 137, 146 (1990)). Indeed, a jury, or a court sitting without a jury, may not consider fresh complaint testimony "as substantive evidence of guilt, or as bolstering the credibility of the victim; it may only be considered for the limited purpose of confirming that a complaint was made." Ibid.

To qualify as "fresh-complaint evidence," "the victim's statement must have been made spontaneously and voluntarily, within a reasonable time after the alleged assault, to a person the victim would ordinarily turn to for support." Id. at 455. Additionally, "not all questioning preceding a complaint deprives an utterance of the spontaneity and voluntariness needed for it to be admissible under the fresh complaint rule." Bethune, 121 N.J. at 144. Rather, "general, non-coercive questions do not rob a complaint of its admissibility under the fresh-complaint rule." Ibid.

Our Court recognizes a distinction between questioning that merely precedes a complaint of sexual abuse and coercive questioning. Id. at 145. The Court left it "to the trial court to determine when that line is crossed." Ibid. Indeed, "[i]n each case the trial court must examine the degree of coercion involved in the questioning of the child and determine whether the child's complaint was spontaneous or directly in response to the interrogation." Ibid. "Among the factors the court should consider . . . are the age of the child, the child's relationship with the interviewer, the circumstances under which the interrogation takes place, whether the child initiated the discussion, the type of questions asked, whether they were leading, and their specificity regarding the alleged abuser and the acts alleged." Ibid.

Here, Ida was a seventeen-year-old juvenile and her "interviewer" was her older sister. Ida was crying when Claire first saw her, and Claire simply asked Ida why she was crying. Although Ida did not immediately respond, Claire persisted only in attempting to determine the reason Ida was crying. Claire's questioning was not coercive, and Ida's disclosure of the assault was made spontaneously, voluntarily, and shortly after the assault occurred. See generally Hill, 121 N.J. at 167 (noting courts have allowed complaints made in response to "general non-coercive questioning"); see also State v. L.P., 352 N.J. Super.

369, 382 (App. Div. 2002) (determining that while a friend's mother's question to the juvenile victim asking, "what happened" "could perhaps be characterized as 'interrogation,' it was not in any sense suggestive or coercive"). We therefore find no basis to conclude the court abused its discretion by admitting Claire's testimony as fresh complaint evidence. See Bethune, 121 N.J. at 145 (explaining a reviewing court considers a challenge to the admission of fresh complaint evidence for an abuse of discretion).

We also consider the court's use of Claire's testimony. In its opinion, the court erred by stating there are "different uses" for fresh complaint testimony, including "the use of it as substantive evidence." The court further stated fresh complaint testimony "can be used either substantially or could be used . . . towards [Ida's] credibility." The court's statements are incorrect as a matter of law because fresh complaint testimony may do no "more than rebut a charge of fabrication based on silence." R.K., 220 N.J. at 460.

Nonetheless, the court's reliance on the testimony as substantive evidence was harmless error. "Any error or omission shall be disregarded . . . unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ." R. 2:10-2. "The possibility must be real, one sufficient to raise a

A-1615-18T1

reasonable doubt as to whether [it] led the [fact-finder] to a result it otherwise might not have reached." State v. Bankston, 63 N.J. 263, 273 (1973).

Here, the record does not support a reasonable doubt that the court, as the factfinder, would have reached a different result if it had not considered Ida's initial report to Claire as substantive evidence. The recording established Greg penetrated Ida's vagina, and, thus, the primary issue at trial was whether Greg acted with consent or force or coercion. The court based its credibility determinations primarily on Ida's demeanor in the courtroom and what the court determined was her lack of any motivation to fabricate a version of the events. In accepting Ida's version, the court also found Greg, who admitted penetrating Ida's vagina while recording it, was wholly incredible in asserting Ida consented.

Based on the totality of the court's findings, we are not convinced the court's fleeting reference to Claire's testimony raises a reasonable doubt about the testimony capable of resulting in an adjudication the judge would not otherwise have reached. Bankston, 63 N.J. at 273; R. 2:10-2. Nor does Greg provide any argument or support for such an inference on appeal.

D.

We affirm the court's adjudications and dispositions subject to the court's decisions on the issues presented at the remand hearing. Based on the record

presented, the court's credibility determinations, findings of fact, and conclusions of law supporting the adjudications are amply supported, and we discern no basis to reverse them. We remand, however, for the court to conduct a N.J.R.E. 104 hearing on Greg's request to suppress his phone and the evidence, including the text messages, data, and video recording, extracted from the phone.

We do not offer any opinion on the merits of those issues, and, as noted, we remand for the separate hearing on those issues the court did not conduct in the first instance and for the court to make the required findings of fact and conclusions of law supporting its decision on those issues. See R. 1:7-4(a). If the court concludes either the phone or its contents should have been suppressed, the court shall vacate the adjudications and dispositions and order a new trial on the remaining two charges. In all other respects, we affirm Greg's adjudications and the court's final disposition order.

Any of Greg's arguments we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1615-18T1