JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.
*269 **438 In this case, we consider the admissibility of evidence procured from a home after police officers' warrantless entry.
A man was attacked at a bus stop in Willingboro and his cell phone was stolen. He and a police officer tracked the phone's location to a nearby house using a phone tracking application.
Several officers arrived at the house, and one spotted the stolen cell phone's case through a window. When no one responded to their knocks on the door, the officers entered the house through an unlocked window. Once inside, they performed a protective sweep to determine whether the suspect was inside, and they found defendant, J.A., then seventeen years of age, under the covers of a bed. Shortly thereafter, defendant's mother and brother arrived home. After the officers explained their investigation, defendant's mother consented to a search of the house, and defendant's brother voluntarily retrieved the stolen phone. Defendant was later charged with second-degree robbery for theft of the phone.
Defendant moved to suppress the evidence, arguing that the officers' entry into his home was unconstitutional because the officers entered without a warrant and there were no circumstances that would justify an exception to the warrant requirement. The trial court denied defendant's motion to suppress. The court found that, although the officers' search procedure may have been imprudent, it was ultimately defendant's brother-without any coercion or duress from law enforcement-who retrieved the cell phone. The court reasoned that defendant could not challenge the seizure of the cell phone in light of that lack of state action.
Defendant appealed, and the Appellate Division affirmed. The panel held that the officers had probable cause to search and found that exigent circumstances justified the officers' warrantless **439 entry into defendant's home. The panel also found that the fact that defendant's brother, and not law enforcement officers, retrieved the phone neutralized any potential problems with his mother's consent.
We disagree with the panel's determination that the officers' warrantless entry was justified by the claimed exigency faced by the officers. However, we agree that defendant's brother's actions did not constitute state action and were sufficiently attenuated from the unlawful police conduct. Because we find that the brother's independent actions operate to preclude application of the exclusionary rule to the evidence, we do not reach the question of defendant's mother's consent to search. Accordingly, we modify and affirm the judgment of the Appellate Division.
A.
On May 30, 2014, the victim was standing at a bus stop in Willingboro when he was approached by a young man in a hooded black sweatshirt and camouflage shorts. The young man asked to use the victim's cell phone, explaining that he was locked out of his house. The victim hesitated, then reached to take out his phone. As the victim was facing the other direction, the man punched him in the arm, took the phone, and ran.
A Willingboro Police Officer was dispatched to meet the victim at the bus stop. The victim explained that the phone was an Apple iPhone, which had been in a pink glittery case.
The officer and the victim used the "Find My iPhone" application to track the location of the phone. The application immediately identified a house about three *270 blocks from the bus stop as the phone's whereabouts. After about two minutes, the phone was shut off, which prevented the application from further tracking the phone's location.
The officer went to the house, and other police officers were dispatched there as well. The officers decided to secure the perimeter of the house. While performing an exterior security **440 check, an officer peered through a first-floor window and noticed a pink glittery phone case matching the victim's description on a nearby bed. At that point, the police thought that the young man who took the victim's phone may have been inside the house.
The officers believed that the house was abandoned: curtain blinds covered most of the windows, there were no signs of life inside or cars in the driveway, and no one responded to the officers' several knocks on the front door.
One officer found an unlocked window on the first floor, through which he and another officer entered the house. Another officer subsequently entered through the front door. Once inside, the officers began searching the house for the suspect. During their search, they observed the phone case that was previously seen through the first floor window, but did not take possession of it. The phone was not found during that initial search.
The officers found defendant, unarmed, upstairs in the master bedroom, lying under a blanket on the bed. The officers also found a hooded sweatshirt and a pair of camouflage shorts nearby.
The officers handcuffed defendant, brought him downstairs, and questioned him about his knowledge of the robbery. Defendant's family members subsequently arrived at the house, including his older brother and mother, who lived there. The latter appeared irate at defendant upon her arrival. She asked the police "what did [defendant] do now?" and said that she was "sick" of his antics and that she previously "told him if he comes here acting up he's got to go." She angrily informed the officers that they could search the house for the missing phone.
The officers explained to defendant's brother that they suspected that defendant had stolen the phone. Defendant's brother irritably responded that stealing a phone is something that defendant would be inclined to do. The brother asked if the officers had found the phone, and when they responded that they had not, he said that if it was not in defendant's bedroom, it was probably in the younger brother's room. Without encouragement from the **441 police, he went to their younger brother's room accompanied by an officer, found a phone, and gave it to the officer. The phone matched the victim's description of his stolen phone.
Defendant's mother later provided written consent to search the house.
B.
Defendant was charged with an act that would have constituted second-degree robbery, contrary to N.J.S.A. 2C:15-1(a)(1), had he been an adult at the time. He filed a motion to suppress the phone, arguing that it was found as a result of an unconstitutional search and seizure.
At the suppression hearing, the court found that the police did not conduct a search of the residence until his mother gave consent. The court also found that defendant's brother's search was not driven by "coercion or duress from law enforcement," explaining that although "third parties acting on behalf of the State are bound by constitutional strictures," the brother's actions here did not constitute state action. The court opined that the officers' behavior in the house may have *271 amounted to "sloppy search procedure." It held, however, that because defendant's brother retrieved the phone, and because he did not act as an agent of the officers, defendant could not bring a constitutional claim to challenge the seizure of the phone. Therefore, the court denied defendant's suppression motion.
The case went to trial and defendant was adjudicated delinquent and sentenced to two years of house arrest.
Defendant appealed, arguing that the trial court should have suppressed the cell phone evidence because the police officers' entrance into his home and subsequent search were unconstitutional. The Appellate Division affirmed. The panel concluded that the officers had probable cause to search and faced exigent circumstances, which justified their warrantless entry into defendant's home.
**442 The panel explained that the "novel aspect of cutting-edge technology"-the Find My iPhone application-allowed the police to track the stolen iPhone, and that the police confirmed that the phone was inside the house when they spotted its case through a window. Together, those facts gave the officers "a reasonable and well-grounded belief that the person who robbed the victim minutes earlier was inside the home."
The panel stated that "[t]he technology that led police to [defendant's] home provided some of the exigency supporting their entry." In particular, the court found it significant that two minutes after the officer activated the "Find My iPhone" application, the phone was turned off. That led the officer to feel that "immediate action was required because once the phone was turned off, it could be moved and the GPS capabilities would not function." The panel found that this concern was reasonable, "as the small cell phone could easily have been destroyed or hidden, and was the only physical evidence linking [defendant] to the robbery." Thus, the panel concluded that, "in entering the residence to secure the area, determine whether there was any danger to anyone in the house, and prevent destruction of the proceeds of the robbery," the police acted reasonably and within the confines of the Fourth Amendment.
The panel reasoned that had the officers identified defendant as a suspect immediately following the taking of the victim's phone and then physically followed him to the house, the "hot pursuit" doctrine, in all likelihood, would have permitted the warrantless entry. The panel found that, though those facts are not present here, there "was a close temporal link between a serious criminal event, during which physical force was used against the victim, and the police pursuit that resulted in a warrantless entry." The panel also found that there was "a reasonable expectation that a delay in obtaining a warrant would result in the destruction of evidence." Therefore, the panel concluded that the record supported a finding that the hot pursuit exception to the warrant requirement rendered the officers' action constitutional.
**443 Moreover, the panel noted that defendant's brother voluntarily retrieved the phone and handed it to police. The panel found that because defendant's brother, a non-state actor, uncovered the phone, defendant's mother's consent was not significant to the constitutional analysis of this search. The panel consequently affirmed.
Defendant filed a petition for certification with this Court, again challenging the trial court's denial of his suppression motion. We granted certification. 229 N.J. 164, 160 A.3d 711 (2017). We also granted amicus curiae status to the American Civil Liberties Union of New Jersey (ACLU)
*272 and the Seton Hall University School of Law Center for Social Justice.
II.
A.
First, defendant argues that the hot pursuit doctrine cannot validate the officers' warrantless entry into his home. For the hot pursuit doctrine exception to apply, defendant asserts, the State must show that the "suspect (1) was armed and immediately dangerous or (2) knew that the police were in pursuit and therefore had a reason to immediately dispose of evidence." Defendant contends that the State has failed to prove that he posed a danger to anyone or that he knew that he was being trailed and would thus be motivated to destroy evidence.
Additionally, defendant suggests that whether his brother led the police to the phone is "legally insignificant" because the "police were not lawfully present in the home." Defendant adds that his brother was not acting as a private citizen because a police officer was "right beside" him as they searched the house together. Therefore, defendant asserts, his brother was acting on behalf of the State for constitutional purposes.
B.
As does defendant, amici Seton Hall University School of Law Center for Social Justice and the ACLU claim that the officers'
**444 entry into defendant's home was not justified under any exception to the warrant requirement. Amici argue that the hot pursuit doctrine is not applicable because the police were never in pursuit of defendant and there was no basis to believe that the suspect either posed a danger to officers or anyone in the house or knew that he was being followed and would therefore be likely to destroy the phone. Seton Hall University School of Law Center for Social Justice also posits that the destruction of the phone was not even possible, distinguishing it from evidence in other cases, such as controlled substances, which can actually be disposed of completely via flushing or burning. Therefore, Seton Hall University School of Law Center for Social Justice suggests that there could be no fear that the phone would lose its evidentiary value.
Seton Hall University School of Law Center for Social Justice further asserts that the officers were not justified in entering the home based on any other exigency because the theft of a phone does not alone present sufficiently dangerous circumstances and the officers could have safely waited to obtain a telephonic warrant while securing the house.
As to defendant's brother's search, amici argue it was the product of the unlawful police entry. Amici contend that defendant's brother acted only after he discovered that the police had-as far as he knew, lawfully-entered the home, gathered inculpatory evidence, and seized defendant. Thus, amici claim, the search was the inadmissible fruit of the illegal entry's poisonous tree.
C.
The State contends that objectively exigent circumstances existed to justify the officers' entry because the officers entered the house "shortly after learning that evidence of a robbery was in the house." The State also asserts the officers' reasonable concern that evidence might be destroyed if they waited to obtain a warrant because the "suspect had already changed the appearance of the stolen iPhone by removing it from its case" and had "turned the phone off." The State stresses that because the officers were **445 investigating a *273 violent robbery and did not know the seriousness of the threat that they or the occupants of the house faced from the suspect, they needed to enter the house in order to protect themselves and others. Additionally, the State disputes amici's argument that the hot pursuit doctrine can never be applied where the perpetrator is unarmed or where there is no actual "chase."
Finally, the State emphasizes that defendant's brother voluntarily located the stolen phone and gave it to the officers. The State contends that defendant's brother's actions were independent, non-state actions that were sufficiently attenuated from any alleged misconduct related to the officers' entry. Thus, according to the State, the trial court properly held that the phone was admissible at trial.
III.
A.
When an appellate court reviews a trial court's decision on a motion to suppress, the reviewing court defers to the trial court's factual findings, upholding them "so long as sufficient credible evidence in the record supports those findings." State v. Gonzales, 227 N.J. 77, 101, 148 A.3d 407 (2016). "An appellate court 'should give deference to those findings of the trial judge which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy.' " State v. Elders, 192 N.J. 224, 244, 927 A.2d 1250 (2007) (quoting State v. Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964) ).
However, the reviewing court need not defer to the trial court's legal conclusions, State v. Bryant, 227 N.J. 60, 71-72, 148 A.3d 398 (2016), which appellate courts review de novo, State v. Hathaway, 222 N.J. 453, 467, 120 A.3d 155 (2015).
**446 B.
The Fourth Amendment of the United States Constitution and Article 1, Paragraph 7 of the New Jersey Constitution both safeguard the right to privacy and forbid warrantless entry into a home except under certain circumstances. State v. Davila, 203 N.J. 97, 111-12, 999 A.2d 1116 (2010) ; see also State v. Cassidy, 179 N.J. 150, 160, 843 A.2d 1132 (2004) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (quoting State v. Hutchins, 116 N.J. 457, 463, 561 A.2d 1142 (1989) ) ). Therefore, a warrantless entry into a home is presumptively invalid unless the State can show that it falls within one of the specific, delineated exceptions to the general warrant requirement. Davila, 203 N.J. at 111-12, 999 A.2d 1116. Courts subject warrantless entries to "particularly careful scrutiny," and "only in extraordinary circumstances may ... [such entries] be justified." State v. Bolte, 115 N.J. 579, 583-84, 560 A.2d 644 (1989) (citing Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) ).
Evidence found pursuant to a warrantless search not justified by an exception to the warrant requirement is subject to suppression, see State v. Edmonds, 211 N.J. 117, 121-22, 47 A.3d 737 (2012), under the exclusionary rule-" 'a judicially created remedy designed to safeguard' the right of the people to be to be free from 'unreasonable searches and seizures,' " State v. Williams, 192 N.J. 1, 14, 926 A.2d 340 (2007) (quoting United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) ). The exclusionary rule prohibits the State from "introducing into evidence the 'fruits' of" unlawful police conduct, *274 State v. Badessa, 185 N.J. 303, 311, 885 A.2d 430 (2005), and thus denies "the prosecution the spoils of constitutional violations," id. at 310, 885 A.2d 430 (citing State v. Evers, 175 N.J. 355, 376, 815 A.2d 432 (2003) ).
However, the exclusionary rule applies to preclude the admission of evidence only when such evidence is suitably linked **447 to the police misconduct. Id. at 311, 885 A.2d 430. Therefore, when evidence is acquired by constitutionally valid means after initial unconstitutional action by law enforcement, courts must consider whether the exclusionary rule is applicable.
The appropriate inquiry for courts assessing the admissibility of the evidence is whether the evidence was "the product of the 'exploitation' of [the unconstitutional police action] or of a 'means sufficiently distinguishable' from the constitutional violation such that the 'taint' of the violation was 'purged.' " State v. Shaw, 213 N.J. 398, 414, 64 A.3d 499 (2012) (quoting Hudson v. Michigan, 547 U.S. 586, 592, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) ). Such evidence is admissible "when the connection between the unconstitutional police action and the secured evidence becomes 'so attenuated as to dissipate the taint' from the unlawful conduct." Ibid. (quoting Badessa, 185 N.J. at 311, 885 A.2d 430 ).
In Brown v. Illinois, 422 U.S. 590, 593-94, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the United States Supreme Court identified three factors that courts should consider in evaluating attenuation between the valid and violative police actions. We summarized them in Shaw: "(1) 'the temporal proximity' between the illegal conduct and the challenged evidence; (2) 'the presence of intervening circumstances'; and (3) 'particularly, the purpose and flagrancy of the official misconduct.' " 213 N.J. at 415, 64 A.3d 499 (quoting Brown, 422 U.S. at 603-04, 95 S.Ct. 2254 ). The determination of whether evidence is the fruit of unlawful police conduct is a factual matter for courts to decide on a case-by-case basis. State v. Johnson, 118 N.J. 639, 653, 573 A.2d 909 (1990) (citing Brown, 422 U.S. at 604 n.10, 95 S.Ct. 2254 ; Dunaway v. New York, 442 U.S. 200, 218, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) ; State v. Worlock, 117 N.J. 596, 625, 569 A.2d 1314 (1990) ).
In sum, evidence seized without a warrant and in the absence of an exception to the warrant requirement is subject to suppression unless the exclusionary rule is inapplicable. That rule does not apply when the conduct through which the evidence is obtained **448 was too attenuated from the unlawful police conduct to be subject to its "taint."
IV.
Here, the State argues that the warrantless entry was lawful because it was justified by the exigency faced by the officers.[1]
A.
One recognized exception to the warrant requirement is the presence of exigent circumstances. State v. Johnson, 193 N.J. 528, 552, 940 A.2d 1185 (2008). To invoke that exception, the State must show that the officers had probable cause and faced an objective exigency. Bolte, 115 N.J. at 585, 560 A.2d 644 ; accord *275 State v. Dunlap, 185 N.J. 543, 551, 888 A.2d 1278 (2006).
The latter inquiry is fact-sensitive. State v. Nishina, 175 N.J. 502, 516-17, 816 A.2d 153 (2003). In that evaluation, a court considers the totality of the circumstances, see State v. DeLuca, 168 N.J. 626, 632, 775 A.2d 1284 (2001), including: "the urgency of the situation, the time it will take to secure a warrant, the seriousness of the crime under investigation, and the threat that evidence will be destroyed or lost or that the physical well-being of people will be endangered unless immediate action is taken," Johnson, 193 N.J. at 552-53, 940 A.2d 1185. Regarding the weight assigned to the respective considerations, we have recognized that "[p]olice safety and the preservation of evidence remain the preeminent determinants of exigency." Dunlap, 185 N.J. at 551, 888 A.2d 1278.
**449 "The 'hot pursuit' of a defendant who poses a threat to public safety may in certain contexts constitute an exigent circumstance sufficient to support a warrantless home entry ...." Bolte, 115 N.J. at 598, 560 A.2d 644 ; see also Steagald v. United States, 451 U.S. 204, 218, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (noting the Court's longstanding recognition that " 'hot pursuit' cases fall within the exigent-circumstances exception to the warrant requirement").
For a "hot pursuit" to justify an exception to the warrant requirement, officers must have had probable cause, Bolte, 115 N.J. at 593, 560 A.2d 644, and have been "in immediate or continuous pursuit of the [suspect] from the scene of [the] crime," id. at 592, 560 A.2d 644 (quoting Welsh, 466 U.S. at 753, 104 S.Ct. 2091 ). However, although " 'hot pursuit' means some sort of a chase, ... it need not be an extended hue and cry in and about the public streets." United States v. Santana, 427 U.S. 38, 43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (internal quotation marks and brackets removed) (validating warrantless entry after police were told of suspect's location by third party, traveled to her location, saw her on front porch of her house, and followed her in as she retreated).
Because the "hot pursuit" doctrine is a subset of the exigent-circumstances exception to the warrant requirement, the touchstones that would justify a warrantless entry remain the possible destruction of evidence, ibid.; Bolte, 115 N.J. at 594, 560 A.2d 644, and the threat of violence by the suspect, Bolte, 115 N.J. at 598, 560 A.2d 644.
In Bolte, for example, a police officer observed the defendant driving erratically for approximately one mile. Id. at 581, 560 A.2d 644. The officer followed the defendant home and when the defendant exited his car and entered his home through a garage door, the officer followed him into the garage and house. Ibid. The officer continued upstairs and arrested the defendant in his bedroom. Ibid. The defendant refused to submit to a breathalyzer test at the police station and was charged with motor vehicle and **450 disorderly persons offenses. Ibid. The defendant moved to suppress evidence of his refusal to submit to the breathalyzer test, claiming that he had been subject to an unlawful arrest when the officer entered his home without a warrant. Ibid.
The trial court held that the officer's entry into the house was justified under the hot pursuit exception to the warrant requirement. Ibid. The Appellate Division reversed, finding that the hot pursuit doctrine applies only when the suspect has committed a serious offense, and also holding that exigent circumstances did not exist in the case. Id. at 583, 560 A.2d 644.
*276 This Court affirmed, finding that hot pursuit could not justify the police entry. Id. at 593, 560 A.2d 644. We emphasized that the defendant there was unarmed, and the police had no reason to believe that he posed a danger to the police or the public. Ibid. We found that after the defendant had entered his home, there was no indication that he would hurt anyone inside or "leave the house to resume his erratic driving behavior." Id. at 593-94, 560 A.2d 644. Finally, we highlighted that the officers also had no reason to believe that the defendant would destroy evidence-a justification usually reserved for narcotics cases. Id. at 594, 560 A.2d 644 (comparing facts to those of Santana, 427 U.S. at 39-41, 96 S.Ct. 2406, which involved the "threatened destruction of the narcotics"). We consequently affirmed the Appellate Division's determination that the evidence should be suppressed. Id. at 598, 560 A.2d 644.
B.
With those principles in mind, we turn to the facts of this case and hold that the officers' warrantless entry into defendant's house was not justified by exigent circumstances. Although we agree with the Appellate Division's finding that the officers had probable cause, we reject its application of the hot pursuit doctrine.
Initially, we need not consider whether the officer's pursuit of defendant, facilitated by his use of the Find My iPhone application, **451 falls within the purview of the hot pursuit doctrine because the doctrine does not apply for other reasons. Our analysis of the circumstances surrounding this pursuit informs our conclusion that it cannot constitute an exigency sufficient to justify the suspension of the warrant requirement. Although the crime committed was arguably a violent one, the State has failed to prove that the police had any basis to believe that defendant would injure anyone inside the house or the officers themselves, so that waiting to obtain a warrant would have been unreasonable.
Likewise, the State has not shown that the officers had any reason to believe that defendant would (or could effectively) destroy the phone. There is no evidence supporting that defendant knew that he was being followed and would thus have had an impetus to dispose of the phone. And even if he did, unlike controlled substances or narcotics, a phone cannot be easily flushed down a drain or destroyed by burning. While it is possible that defendant powered down the phone so that he could not be as easily traced, deactivating a tracking device on an electronic piece of evidence simply reduces the trackable evidence to an average piece of evidence; the mere presence of evidence in a home does not alone justify a warrantless entry.
In the absence of any danger that defendant would commit violent acts or that he would destroy the desired evidence, we find that the officers' pursuit of defendant was not an exigency overriding the warrant requirement. We therefore find that neither exigency nor the hot pursuit doctrine justified the officers' warrantless entry here. However, for the following reasons, as a result of defendant's brother's attenuated, non-state actions, we affirm the trial court's denial of defendant's motion to suppress.
V.
A.
The Fourth Amendment's prohibition against unreasonable searches and seizures operates as a restraint only upon **452 sovereign authority. State v. Scrotsky, 39 N.J. 410, 416, 189 A.2d 23 (1963). Thus, "where a private person steals or unlawfully takes possession of property from the *277 premises of the owner and turns it over to the government, which did not participate in the taking, it may be used as incriminating evidence against the owner in a subsequent criminal prosecution." Ibid.
When a private person acts "as an arm of the police," however, the private person's seizure of property constitutes state action. Ibid. In other words, when a private citizen acts "in concert" with police officers, the private citizen's actions are treated as state action for purposes of the Fourth Amendment. See ibid.
In Scrotsky, the landlady of an apartment building suspected that one of her tenants had been stealing personal effects from her home located within the building. Id. at 413, 189 A.2d 23. After two previous visits to the tenant's apartment, during which she discovered her possessions, the landlady entered the tenant's apartment a third time, accompanied by a police detective. Id. at 413-14, 189 A.2d 23. At the direction of the detective, the landlady found and reclaimed her stolen property and brought it to police headquarters before returning home with it. Id. at 414, 189 A.2d 23. The tenant was not home during any of the three visits. Ibid. He was arrested for theft of the landlady's property and was eventually convicted. Ibid.
On appeal to this Court, the tenant argued that the evidence taken by the landlady from his apartment, which was used at trial to prove the State's case, was procured by an unconstitutional search and seizure. Id. at 412, 189 A.2d 23. The State contended that the evidence was not vulnerable to constitutional challenge and hence admissible because the landlady, a non-state actor, effectuated the search and removed her stolen possessions. Id. at 414-15, 189 A.2d 23.
We disagreed, finding that the landlady "went into the apartment with the [police] and seized the property under color of their **453 authority and as a participant in a police action." Id. at 415, 189 A.2d 23. Reasoning that "the detective and [the landlady] went to the apartment ... for a dual purpose, she to recover her property, he to investigate and obtain evidence of [the] crime," id. at 415-16, 189 A.2d 23, we determined that "[t]he search and seizure by one served the purpose of both, and must be deemed to have been participated in by both," id. at 416, 189 A.2d 23. We concluded that it would have been "idle to say that the officers did not conduct the search or seizure," because the landlady had to be considered the instrument of the police. Id. at 415, 189 A.2d 23. We therefore remanded for a new trial, ordering that the evidence seized by the landlady could not be introduced. Id. at 417-18, 189 A.2d 23.
B.
Guided by those principles, we turn to the State's argument that defendant's brother's search for the missing phone was independent non-state action free from constitutional restrictions and sufficiently attenuated from the police's illegal entry to be permissible. We agree.
Defendant's brother was clearly not acting as an agent of the State when he searched the house for the phone. Unlike in Scrotsky, where the landlady and the police detective traveled to the tenant's apartment together with the sole purpose of discovering and retrieving the landlady's stolen property, defendant's brother's actions were completely independent of the officer's investigation. Frustrated with yet another incident of defendant's misconduct, defendant's brother decided to search the house without solicitation or even encouragement from the officers present. And when the brother successfully recovered the victim's phone, he offered *278 it to the police without request. The mere presence of an officer during the brother's self-imposed investigation does not by itself indicate police coercion or influence.
Moreover, defendant's brother's actions were voluntary and sufficiently attenuated from the officers' unlawful entry. No evidence in the record supports a finding that defendant's brother's search was causally or temporally connected to the police misconduct.
**454 Contrary to the dissent's assertions, it is uncontroverted that defendant's brother arrived some time after the police without knowledge that the police lacked a warrant. Further, the dissent's conclusions that the police's unconstitutional presence "surely heavily influenced" and motivated the brother's decision to search for the phone and that it was "not likely" that the brother would have looked for evidence in the parents' home without the presence of the police are unsupported by the record. Post at 458-59, 186 A.3d at 280-81. Defendant's brother's unprovoked decision to search for the phone himself is an intervening circumstance that breaks the causal connection between the unlawful police entry and the finding of the phone.
The dissent's reliance on State v. Smith, 155 N.J. 83, 713 A.2d 1033 (1998), is misplaced. There, the police knowingly and intentionally elicited consent to search the apartment shortly after gaining access to it by unconstitutional means. Here, the brother's actions were purely voluntary and unsolicited by the police. Id. at 89-90, 713 A.2d 1033. Here, even if we were to characterize the officers' action as flagrant, the entry never led to a police-enacted search for the phone. Defendant's brother chose to undertake his search on his own, motivated by his displeasure with defendant's actions-not by any encouragement, request, or intimidation by the police. Therefore, his actions constituted "means sufficiently distinguishable to be purged of the primary taint" of the police misconduct. Shaw, 213 N.J. at 413, 64 A.3d 499 (quoting Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ). Consequently, we hold that the phone is immune from the reach of the exclusionary rule.[2]
VI.
Accordingly, we modify and affirm the judgment of the Appellate Division.
CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICE ALBIN filed a dissenting opinion, in which JUSTICE LaVECCHIA joins.

As a threshold matter, although the State claims that the police officers may have believed the home was vacant, the State has not shown a reasonable basis to believe the house was abandoned. The State, in fact, concedes that it is not challenging the juvenile's standing based on a theory of abandonment. See State v. Brown, 216 N.J. 508, 83 A.3d 45 (2014).

Because we find that the brother's independent actions operate to remove the evidence from the ambit of the exclusionary rule, we do not reach the question of defendant's mother's consent to search.