**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2518-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KEVIN M. CONHEENEY,

    Defendant-Appellant.

_____

Argued March 18, 2025 – Decided April 3, 2025

Before Judges Gooden Brown and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 22-06-1110.

Mitchell J. Ansell argued the cause for appellant (Ansell Grimm & Aaron, PC, attorneys; Mitchell J. Ansell, of counsel and on the briefs; Tara K. Walsh, on the briefs).

Kaili E. Matthews, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Kaili E. Matthews, of counsel and on the brief).

PER CURIAM

Defendant Kevin M. Conheeney appeals from the portion of the April 20, 2023 Law Division order denying his motion to suppress controlled dangerous substances (CDS), arguing the stop of his motor vehicle was not predicated on reasonable and articulable suspicion that he was involved in criminal activity.

After reviewing the record, we affirm substantially for the reasons articulated by the trial court in its thorough written decision.

I.

Given the limited issue on appeal, we discern the salient facts from the record established at the suppression hearing. The State presented the testimony of Detectives Duncan MacRae and Samantha Sutter. Defendant did not call any witnesses to testify.

A.

On September 29, 2020, MacRae and Sutter were assigned to the Toms River Police Department Special Enforcement Team as plain clothes officers and proceeded to surveille a parking lot that was known by the police for drug trafficking. In the ten years prior to the date of defendant's arrest, MacRae participated in approximately twenty-five narcotics-related investigations resulting in arrests in that parking lot.

Soon after beginning their surveillance, MacRae observed a white Toyota truck enter the lot and park far from the stores. The driver did not exit the vehicle. Less than five minutes later, a Hyundai parked nearby and the driver got into the Toyota. The Toyota was driven around the parking lot for roughly one minute before it returned to the Hyundai and dropped off the passenger. Both vehicles then exited the parking lot. MacRae testified the cars never left his line of sight, and neither occupant entered any of the businesses the parking lot services. MacRae believed the two drivers engaged in a CDS transaction, based on his observations. He then radioed headquarters with descriptions of the vehicles, requesting the assistance of uniformed police.

MacRae and his partner followed the Toyota, driven by Christopher McDermott, and eventually stopped the vehicle after he parked in a driveway in a nearby neighborhood. McDermott was read his Miranda[1] rights after exiting the vehicle. McDermott, appearing nervous, cooperated with MacRae and told the detective he was in the parking lot for a football pool, but could not say "which way the money went," meaning who won the pool. McDermott consented to a search of his person and the Toyota, which yielded a plastic bag

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

containing clear capsules and white powder. When a field test revealed the powder was cocaine, MacRae arrested McDermott.[2]

Meanwhile, Sutter was following the Hyundai driven by defendant. As Sutter tailed him, she radioed for assistance of uniformed officers driving marked police vehicles. Corporal Westfall responded and effectuated the stop of defendant's vehicle, which was captured on his mobile video recorder (MVR).

Sutter then spoke to defendant, describing the incidents MacRae witnessed in the parking lot. When asked if defendant had anything illegal in the car, he responded no, but refused to consent to a search of the vehicle. Sutter then requested a Sheriff canine to conduct a sniff of the vehicle. According to the MVR, defendant appeared calm and cooperative. A computer search revealed defendant's driver's license was suspended, and Westfall issued a summons to defendant.

The MVR reviewed at the suppression hearing showed Sutter received a cell phone call approximately ten minutes into the stop. Sutter testified the call was from MacRae, informing her of McDermott's arrest based on the CDS identified during the field test. Sutter told MacRae she also observed clear

---

[2] The CDS obtained during that vehicle search was later laboratory tested and determined to be AP238, which is not categorized as a CDS.

capsules matching MacRae's description in plain view on the front seat of defendant's vehicle. After seizing the capsules, Sutter canceled the canine sniff, placed defendant under arrest, and frisked him.

"A quantity of money" was seized from defendant upon a frisk of his person. During the search of defendant's vehicle, the police found a small bag filled with white powder that tested positive in the field for cocaine, along with four capsules containing suspected cocaine. Upon lab testing, the substance was determined to be n-ethylpentylone, a Schedule I CDS.

B.

An Ocean County grand jury indicted defendant, charging him with third degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1), and fourth degree operating a motor vehicle during a period of license suspension, N.J.S.A. 2C:40-26(b). Defendant moved to suppress the evidence obtained from the search of his vehicle. After an evidentiary hearing, the court granted defendant's motion to suppress in part and denied it in part, setting forth its reasoning in a comprehensive written decision.

Defendant only appeals the denial of his motion to suppress based on the validity of the motor vehicle stop, raising the following argument for our consideration:

> THE TRIAL COURT ERRED IN DENYING
> DEFENDANT'S MOTION TO SUPPRESS THE

MOTOR VEHICLE STOP BECAUSE THE STOP WAS UNSUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE OF A REASONABLE AND ARTICULABLE SUSPICION THAT HE WAS INVOLVED IN CRIMINAL ACTIVITY.

Our analysis follows.

## II.

## A.

Our review of the trial court's decision on a motion to suppress requires the application of two different standards. We must "defer[] to the trial court's factual findings" so long as they are supported by "sufficient credible evidence in the record . . . ." State v. Nelson, 237 N.J. 540, 551 (2019) (quoting In re J.A., 233 N.J. 432, 445 (2018)); see also State v. Gonzales, 227 N.J. 77, 101 (2016) ("We are obliged to uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings."). Those factual findings warrant particular deference when they "are substantially influenced by [the trial court's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Robinson, 200 N.J. 1, 15 (2009) (quoting State v. Elders, 192 N.J. 224, 244 (2007)).

"[A] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction."

Ibid. "A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference" and its "legal conclusions are reviewed de novo." State v. Gamble, 218 N.J. 412, 425 (2014).

B.

"[B]oth the United States and the New Jersey Constitutions protect citizens against unreasonable searches and seizures." State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023) (quoting State v. Mann, 203 N.J. 328, 337 (2010)). The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee the right of people to be secure against unreasonable searches and seizures and "impose a standard of reasonableness on the exercise of discretion by government officials to protect persons against arbitrary invasions." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; Gamble, 218 N.J. at 425 (quoting State v. Maristany, 133 N.J. 299, 304 (1993)).

In Terry v. Ohio, the United States Supreme Court established the bedrock principle that a warrantless investigative stop is valid only if it is based on a reasonable and articulable suspicion of involvement in criminal activity or a motor vehicle infraction. 392 U.S. 1, 21 (1968); see also Elders, 192 N.J. at 247 ("An investigatory stop or detention is constitutional only if it

is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity.") (internal quotation marks omitted). "Determining whether reasonable and articulable suspicion exists . . . is a highly fact-intensive inquiry that demands evaluation of 'the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions.'" State v. Nyema, 249 N.J. 509, 528 (2022) (quoting State v. Privott, 203 N.J. 16, 25-26 (2010)); see also State v. Stovall, 170 N.J. 346, 363 (2002) ("It is fundamental to a totality of the circumstances analysis of whether reasonable suspicion exists that courts may consider the experience and knowledge of law enforcement officers.")

We are unconvinced MacRae violated defendant's constitutional rights in conducting the motor vehicle stop. Here, MacRae surveilled a parking lot known to the officers for CDS transactions. Based on MacRae's training and experience regarding arrests in that specific lot, the officer testified that his observations led him to believe defendant and McDermott engaged in a CDS transaction. MacRae testified that neither defendant nor McDermott entered any of the stores in the parking lot, but rather MacRae saw defendant enter

8

McDermott's vehicle and drive around the parking lot before being dropped off at his Hyundai and immediately driving the vehicle out of the lot.

Considering the totality of the circumstances and "based on specific articulable facts," MacRae's observations of defendant's vehicle gave "rise to a reasonable suspicion of criminal activity." See State v. Alessi, 240 N.J. 501, 518 (2020) (internal quotation marks omitted). Thus, we discern no error in the trial court's finding that the motor vehicle stop comported with prevailing law for the reasons detailed by the trial court.

Defendant attempts to distinguish this matter from that of State v. Pineiro, 181 N.J. 13 (2004), and other decisional law, arguing MacRae did not observe behavior or actions indicative of a CDS transaction. We are unpersuaded, based on the trial court's finding that the officers testified credibly as to their observations of defendant, coupled with their knowledge of CDS transactions and arrests in the same parking lot. See Id. at 25 (finding a motor vehicle stop constitutional and that officers had reasonable and articulable suspicion considering the totality of the circumstances and observations of the vehicle while patrolling a high drug, high crime area); see also State v. Arthur, 149 N.J. 1, 16 (1997) (upholding the search of the defendant's vehicle because the totality of the circumstances supported a

reasonable and articulable suspicion the defendant was engaged in illegal drug activity).

Based on our conclusion that the stop comported with prevailing law, we need not address the State's attenuation argument relating to defendant's guilty plea to driving with a suspended license.

Any arguments not addressed in this decision are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2518-23