**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0977-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JERVONE W. BROOKS,
a/k/a MIKE JONES,

     Defendant-Appellant.

_____

          Submitted October 13, 2020 – Decided December 8, 2020

          Before Judges Hoffman and Smith.

          On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 17-03-0617.

          Joseph E. Krakora, Public Defender, attorney for appellant (Whitney Flanagan, First Assistant Deputy Public Defender, of counsel and on the briefs).

          Gurbir S. Grewal, Attorney General, attorney for respondent (Debra G. Simms, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence, defendant Jervone Brooks pleaded guilty to second-degree possession of a firearm while committing a controlled dangerous substance (CDS) offense, in violation of N.J.S.A. 2C:39-4.1(a). In accordance with a plea agreement, the trial court sentenced defendant to a five-year prison term with a forty-two month period of parole ineligibility. Defendant now appeals from the trial court's November 13, 2017 order denying his motion to suppress. We affirm.

I.

We derive the following facts from the suppression motion record. On November 10, 2016, Officer Girard Tell, an officer for three and one-half years with the Pleasantville Police Department, and his partner, Officer VanSyckle, were assigned to the street crimes unit, a proactive patrol, where the officers generated their own work and assisted in investigations. On this date, Officer Tell was attired in green tactical pants and an outer vest carrier with the words "Police Street Crimes" shown in large reflective lettering; in addition, he displayed a metallic badge on his right hip.

At approximately 8:33 p.m., the officers were positioned in an unmarked patrol vehicle when Officer Tell observed a hunter green Jeep traveling west on Washington Avenue in Pleasantville. Officer Tell immediately recognized the

vehicle as belonging to Brian Gould, whom Officer Tell had arrested on a prior occasion for possession of cocaine. During questioning that followed the previous arrest, Gould disclosed to Officer Tell that he had purchased the cocaine in the area near the Pleasantville police station.

Officer Tell decided to follow Gould's vehicle, which eventually stopped outside a residence on Fourth Street, located near the Pleasantville police station. The officers parked their vehicle about four car lengths behind Gould's, on the opposite side of the street, and turned off their headlights. According to Officer Tell, the area was well-lit, and he had an unobstructed view of Gould's car and the residence.

Officer Tell watched as two men exited the front door of the residence, one staying within the fence surrounding the residence, while the other, later identified as defendant, approached the driver's side of Gould's vehicle. Officer Tell observed defendant and the driver of Gould's vehicle make a hand-to-hand exchange, and then observed defendant walk back to the other man standing behind the fence and make another hand-to-hand exchange. Defendant then walked back to Gould's vehicle.

Based on his training in drug recognition and distribution, his past participation in numerous arrests of individuals involved in drug transactions,

3

and Gould's prior statement to him, Officer Tell believed he observed defendant engaged in a narcotics transaction. Consequently, Officer Tell activated the patrol vehicle's siren and emergency lights and exited the vehicle to initiate a pedestrian stop of defendant. After Officer Tell identified himself, defendant immediately ran towards the residence, leading the two officers to chase after him. During this chase, Officer Tell yelled, "police, stop," to no avail, as defendant entered the front door of the residence, closed it, and locked it behind him.

Officer Tell forcibly opened the door and followed defendant upstairs, again identifying himself and ordering defendant to stop. Defendant ran into a dark bedroom, and Officer Tell stationed himself in the hallway outside where he ordered defendant to come out of the bedroom with his hands up. Defendant did not immediately comply with this order, and Officer Tell could hear "some shuffling around" inside the bedroom. After "a short time," defendant appeared in the doorway with his hands up, and Officer Tell ordered him to the ground. Defendant complied, laying down partially in the bedroom and partially in the hallway. At this point, Officer Tell stood behind defendant in the bedroom and placed handcuffs on defendant. Officer Tell asked defendant if he was alone, and defendant informed him somebody else was in the house.

4

Officer Tell then turned on the bedroom lights for "officer safety." He observed cash and clear sandwich baggies on top of a dresser as well as a pink metallic handgun in the open bottom drawer of the dresser. Officer VanSyckle reported observing cocaine in plain view on the first floor and also discovered defendant's brother hiding in another bedroom in the residence. Collectively, the officers seized the following items: a .38 caliber revolver, five cartridges from the handgun, three hollow point bullets, a clear cylindrical container containing suspected cocaine, eighty sandwich baggies, and a digital scale with drug residue. After his arrest, defendant waived his Miranda rights and admitted to police that he had engaged in a narcotics exchange before running from police and that the gun and drugs belonged to him.

In March 2017, an Atlantic County Grand Jury returned Indictment No. 17-3-0617, charging defendant with the following offenses: 1) second-degree unlawful possession of a weapon, to wit, a Charter Arms Revolver, .38 Special Caliber, N.J.S.A. 2C:58-4 and N.J.S.A. 2C:39-5(b)(1) (count one); 2) second-degree possession of a firearm while committing a CDS/Bias crime, N.J.S.A. 2C:35-5(b)(3) and N.J.S.A. 2C:39-4.1(a) (count two); 3) third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1) (count three); third-degree possession of cocaine with intent to distribute, contrary to N.J.S.A. 2C:35-5(b)(3) (count

four); third-degree distribution of cocaine within 1,000 feet of school property, N.J.S.A. 2C:35-7 (count five); fourth-degree possession of dum-dum bullets, contrary to N.J.S.A. 2C:39-3(f) (count six); fourth-degree receiving stolen property, to wit, a revolver, contrary to N.J.S.A. 2C:20-7(a) (count seven); and fourth-degree eluding, contrary to N.J.S.A. 2C:29-2(a)(2) (count eight).

Defendant filed a motion to suppress the evidence seized by Officers Tell and VanSyckle, which the trial court denied in a written decision dated November 13, 2017. On March 22, 2018, defendant pleaded guilty to second-degree possession of a firearm while committing a controlled dangerous substance offense, contrary to N.J.S.A. 2C:39-4.1(a). On July 27, 2018, the trial court sentenced defendant to five years imprisonment with a forty-two month period of parole ineligibility, pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).

This appeal followed, with defendant presenting the following argument:

> EVIDENCE SHOULD HAVE BEEN SUPPRESSED WHERE IT WAS SEIZED FROM A HOME WITHOUT A WARRANT, PROBABLE CAUSE, OR AN EXCEPTION TO THE WARRANT REQUIREMENT.

A-0977-18T4

II.

We apply a highly deferential standard of review to a trial judge's determination on a motion to suppress. State v. Gonzales, 227 N.J. 77, 101 (2016). We will

> uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings. Those factual findings are entitled to deference because the motion judge . . . has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy."
>
> [Ibid. (citation omitted) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).]

"[U]nder . . . the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of our State Constitution, searches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." State v. Elders, 192 N.J. 224, 246 (2007). Searches and seizures conducted without a warrant, "particularly in a home, are presumptively unreasonable." State v. Edmonds, 211 N.J. 117, 129 (2012) (quoting State v. Bolte, 115 N.J. 579, 585 (1989)). Indeed, entry into the home is the "chief evil against which the wording of the Fourth Amendment is directed." State v. Lamb, 218 N.J. 300, 314 (2014) (citation and internal quotation marks omitted). Therefore, "our jurisprudence expresses a clear preference for police officers to

7

secure a warrant before entering and searching a home." State v. Brown, 216 N.J. 508, 527 (2014).

Where a search of a home is challenged, the State has the burden of proving by a preponderance of the evidence the search is "justified by one of the 'well-delineated exceptions' to the warrant requirement." State v. Shaw, 213 N.J. 398, 409 (2012) (quoting State v. Frankel, 179 N.J. 586, 598 (2004)). One such exception is the presence of exigent circumstances. State v. Johnson, 193 N.J. 528, 552 (2008).

Courts have "identified several exigencies that may justify a warrantless search of a home" including "the need 'to prevent the imminent destruction of evidence.'" Kentucky v. King, 563 U.S. 452, 460 (2011) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)); see also State v. Lewis, 116 N.J. 477, 484 (1989); State v. Hutchins, 116 N.J. 457, 467 (1989). This is "the most frequently relied on exigent circumstance in drug cases." Lewis, 116 N.J. at 484. "[D]rugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain." King, 563 U.S. at 461.

The question of whether exigent circumstances exist is evaluated on a case-by-case basis considering the totality of the circumstances. In re J.A., 233 N.J. 432, 448 (2018). Police safety and the preservation of evidence are primary

8

considerations in such an inquiry.  Ibid.  When a defendant retreats or causes some elements of a chase, and thereby causes a "hot pursuit" by police, the United States Supreme Court has stated the situations may create a "realistic expectation that any delay would result in destruction of evidence[,]" thus justifying a warrantless entry.  Bolte, 115 N.J. at 589 (quoting United States v. Santana, 427 U.S. 38, 43 (1976)).  Likewise, a "hot pursuit" may justify a warrantless entry into a home provided the police had sufficient probable cause when they "first sought to arrest [the suspect] . . . in a public place."  Santana, 427 U.S. at 42.

If the State seeks to justify a warrantless entry of a residence because of exigent circumstances, it must also make "a clear showing of probable cause."  State v. Lewis, 116 N.J. 477, 486 (1989).  Probable cause is "a reasonable basis for a belief that a crime has been or is being committed."  State v. Williams, 117 N.J. Super. 372, 375 (App. Div. 1971) (citing State v. Contursi, 44 N.J. 422, 429 (1965)).  In determining whether there was probable cause, the court considers the totality of circumstances.  State v. Basil, 202 N.J. 570, 585 (2010) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).

The trial court found "there was exigency and probable cause for Officer Tell to believe that there were drugs [in the residence,]" and that defendant's

immediate flight in response to the officers turning on their emergency lights and siren indicated "there was a high likelihood that defendant would destroy the discovered CDS evidence if not immediately apprehended[.]"

Defendant contends the trial court erred in finding the officers had probable cause to enter his home, arguing that Officer Tell's observation of an unspecified "exchange" between defendant and the two other men only created a "mere hunch that a drug sale had occurred." In turn, defendant claims the officers' forced entry into the residence "was not justified by exigent circumstances" because there was no reason to believe [defendant] possessed drugs on his person or in the [residence], and therefore no reason to believe evidence would be destroyed." We do not agree.

A consideration of the totality of the circumstances here supports the trial court's finding of probable cause. Officer Tell followed a vehicle that he recognized from a past drug possession arrest involving the vehicle's owner. The vehicle drove to and stopped at an address near the Pleasantville police station, which was within the area where the vehicle's owner had purchased the drugs underlying that previous drug possession arrest. At this location. Officer Tell observed defendant and the vehicle's driver participate in a hand-to-hand

exchange. And when Officer Tell activated his lights and siren and identified himself as a police officer, defendant immediately fled on foot.

All these facts establish the officers had probable cause to believe defendant engaged in a drug transaction and was in possession of contraband. Because the officers had probable cause to arrest the defendant upon witnessing this transaction and attempted to apprehend defendant while he was standing in the public roadway, they were justified in following defendant in "hot pursuit" into the residence without a warrant. Moreover, defendant's sudden flight upon encountering the officers created the realistic expectation that he would destroy any evidence of contraband in the residence if the officers did not immediately follow him. Therefore, the trial court's finding that exigent circumstances justified the officers' warrantless entry into the residence was supported by sufficient credible evidence in the record and was not in error.

Defendant also challenges the trial court's determination that the officers' discovery and seizure of the handgun once inside the residence was justified by the plain view exception to the warrant requirement. This challenge lacks merit.

The plain view doctrine, another exception to the warrant requirement, applies when the following requirements are met: (1) the officer must be "lawfully in the viewing area"; (2) it must be "immediately apparent" to the

11

officer that the items in plain view "were evidence of a crime" or are contraband; and (3) the evidence must be discovered "inadvertently."[1]  State v. Earls, 214 N.J. 564, 592 (2013) (quoting State v. Mann, 203 N.J. 328, 341 (2007)).  The rationale for the plain view doctrine is that "a police officer lawfully in the viewing area" need not "close his [or her] eyes to suspicious evidence in plain view."  State v. Johnson, 171 N.J. 192, 207 (2002) (quoting State v. Bruzzese, 94 N.J. 210, 237 (1983), overruled in part by State v. Gonzales, 227 N.J. 77 (2016)).

Defendant contends the plain view exception did not justify the officers' seizure of the handgun because it was not immediately apparent to Officer Tell that the gun was evidence of a crime or contraband.  Defendant argues "[n]one of the attendant circumstances suggested that the weapon itself was illegal or illegally possessed" and that "[Officer] Tell did not testify as to why he believed that the handgun he observed was contraband.  We disagree.

---

[1]  The New Jersey Supreme Court recently eliminated the "inadvertence prong" from the plain-view exception to the warrant requirement in State v. Gonzales, 227 N.J. 77, 101 (2016).  However, the Court applied this new rule of law prospectively.  Since Gonzales was decided on November 15, 2016, and the search of defendant's residence at issue here took place on November 10, 2016, Gonzales is inapplicable to the matter under review.

Officer Tell observed the handgun in an open drawer of the same dresser where he located the cash and plastic baggies, which "through [his] training and experience," he "associated with the distribution of narcotics[.]" Additionally, Officer Tell heard defendant "shuffling around" inside the bedroom before defendant surrendered himself, which put Officer Tell on notice that the room may contain contraband. Finally, it is worth noting that defendant informed Officer Tell that another individual was present in the house, so seizure of the handgun would also have been justified to protect the safety of the two officers.

We are convinced that the evidence presented at the suppression hearing fully supports the trial court's determination that the officers' entry into the residence and seizure of the evidence were justified under the exigent circumstances and plain view exceptions to the warrant requirement. We accordingly affirm the denial of defendant's motion to suppress.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0977-18T4